```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

PRECIAS FREEMAN,

    Petitioner,

v.                              CIVIL ACTION NO. 1:24-00449

CHRISTI CUTRIGHT,

    Respondent.

## MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Aboulhosn submitted to the court his Proposed Findings and Recommendation ("PF&R") on June 12, 2025, in which he recommended that the court grant respondent's motion to dismiss or, in the alternative, motion for summary judgment, and remove this case from the court's active docket.

In accordance with the provisions of 28 U.S.C. § 636(b), petitioner was allotted fourteen days and three mailing days in which to file any objections to Magistrate Judge Aboulhosn's Findings and Recommendation. The failure of any party to file such objections within the time allowed constitutes a waiver of such party's right to a de novo review by this court. Snyder v.

Ridenour, 889 F.2d 1363 (4th Cir. 1989).  On July 7, 2025, petitioner timely submitted objections to the PF&R.  See ECF No. 20.

   Petitioner is currently serving a 110-month term of imprisonment, imposed on March 23, 2023, by the United States District Court for the District of South Carolina.  See ECF No. 12-1 at 59-60.  In 2016 and 2017, Freeman faced criminal charges in multiple jurisdictions, both state and federal.  The PF&R lays out a detailed chronology of those charges and the corresponding court proceedings.  As relevant here, Freeman was arrested on October 3, 2016, by the State of South Carolina on controlled substance offenses.  On February 14, 2017, Freeman was indicted on a federal drug charge—conspiracy to possess with intent to distribute and distribute hydrocodone and oxycodone, in violation of 21 U.S.C. § 846—in the United States District Court for the District of South Carolina.  The State of North Carolina indicted Freeman on drug trafficking charges on March 21, 2017.  Freeman was released on bond by both the federal and state courts.  However, she was rearrested by the State of North Carolina on March 1, 2018, on new controlled substance offenses.

   On December 13, 2018, the federal court sentenced Freeman to a term of imprisonment of 210 months.  The judgment order did not mention the anticipated state sentences nor direct whether the federal sentence should run consecutively or concurrently to

2

any subsequent sentence.  After sentencing, Freeman was returned to North Carolina custody.

More than a year and a half later, on August 23, 2019, Freeman was sentenced on the North Carolina state charges to a term of imprisonment of 50 to 70 months with credit for 547 days.  The North Carolina judgment also ordered Freeman's sentence "TO RUN CONCURRENT WITH ANY SENTENCE THE DEFENDANT MAY BE SERVING."  ECF No. 12-1 at 47.

On appeal, the United States Court of Appeals for the Fourth Circuit found that Freeman received ineffective assistance of counsel at sentencing, vacated her federal sentence, and remanded for resentencing.  On March 23, 2023, a Post Plea Agreement was reached between Freeman and the United States wherein the government agreed to recommend "a sentence of 110 months with credit for time already served."  On that same day, the district court resentenced Freeman to a 110-month term of imprisonment and recommended that "defendant receive credit for time served in custody for relevant conduct associated with the offense of conviction beginning March 1, 2018."  ECF No. 12-1 at 60.

In her petition, Freeman argues that the Bureau of Prisons ("BOP") is improperly calculating her term of imprisonment.  Specifically, she maintains that the BOP is erroneously (1)

3

denying her credit for time spent in state custody; and (2) denying her request for a nunc pro tunc designation.

In his PF&R, Magistrate Judge Aboulhosn explained that petitioner's claims were subject to dismissal for her failure to exhaust available administrative remedies before filing the instant petition. In her objections, Freeman objects to the PF&R's recommendation that her petition be dismissed for failure to properly exhaust, maintaining that she did exhaust her administrative remedies. See ECF No. 20 at 1-2. However, her petition contradicts this assertion as Freeman admits that her appeal to the Central Office was not complete when she filed suit.

"As a general rule, in the absence of exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent . . . courts require exhaustion of alternative remedies before a prisoner can seek habeas relief." Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010) (internal quotations omitted); see also United States v. Wilson, 503 U.S. 329, 335 (1992) ("Federal regulations have afforded prisoners administrative review of the computation of their credits . . . and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies[.]") (emphasis added). Section 2241 does not contain a statutory mandate that administrative remedies be exhausted, however,

4

courts have judicially imposed such a requirement.  See Jaworski v. Gutierrez, 509 F. Supp. 2d 573, 578 (N.D.W. Va. 2007) ("[T]he exhaustion requirement in habeas corpus actions arising under § 2241 . . . has no statutory mandate, but rather is judicially imposed."); Taylor v. Lue, Civil Action No. 7:19CV486, 2020 WL 5807995, at *3 (W.D. Va. Sept. 29, 2020) ("Although § 2241 does not contain a statutory exhaustion requirement, courts require petitioners to exhaust their administrative remedies prior to seeking habeas review under § 2241.").  Courts within the Fourth Circuit have consistently required litigants to exhaust their alternative remedies before bringing Section 2241 claims.  See Timms, 627 F.3d at 533 (dismissing habeas claim under § 2241 for failure to exhaust); McClung v. Shearin, No. 03-6952, 90 F. App'x 444, 445 (4th Cir. Feb. 6, 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.").

   Requiring exhaustion promotes the "'important considerations of federal court efficiency and administration.'"  Id. at 531 n.5 (quoting Moore v. United States, 875 F. Supp. 620, 624 (D. Neb. 1994)).  Only in "'exceptional circumstances'" should exhaustion be waived, id. at 530-31 (quoting Bowen v. Johnson, 306 U.S. 19, 27 (1939)), such as when the administrative remedy process would be futile.  See Jaworski, 509 F. Supp. 2d at 578; see also Hairston v. Wilson,

1:13cv126(TSE/IDD), 2013 WL 12149685, at *2 (E.D. Va. Feb. 5, 2013) ("It is true that, in rare cases, § 2241 habeas petitioners have been excused from the exhaustion requirement if they can show that proceeding through the administrative remedy process undoubtedly would be an exercise in futility that would serve no useful purpose.") .

Here, although petitioner maintains she did exhaust all available remedies prior to filing her petition, the BOP records and her own petition show otherwise.[1] And her objections do not adequately explain why doing so would have been futile or suggest that exceptional circumstances exist here to excuse her failure to exhaust. Therefore, the court concludes that Freeman was required to exhaust her administrative remedies before filing a Section 2241 petition and, therefore, her objection is **OVERRULED**.

Notwithstanding that Freeman's petition is subject to dismissal for failure to exhaust administrative remedies, the

---

[1] Typically, when seeking dismissal because an inmate has failed to properly exhaust administrative remedies prior to filing suit, the BOP files a declaration from a prison official saying as much and providing the documentation to support the sworn testimony. In this case, respondent filed only the BOP documents with no declaration or affidavit explaining their relevance. The documents alone are not especially helpful to the court. In any event, Freeman's petition itself acknowledges that she had not yet received a final response from the Central Office before filing suit and, therefore, had not properly exhausted her administrative remedies.

6

court has considered petitioner's claims and finds them to be without merit.

*Prior Custody Credit*

To the extent that Freeman argues that the BOP is miscalculating her sentence by failing to award prior custody credit as ordered by the court, that argument fails. "It is well-established that after a district court imposes a sentence, the Attorney General, through the BOP, is responsible for administering the sentence." Roberts v. Bragg, CA No. 9:20-cv-02162-SAL-MHC, 2020 WL 8839683, at *3 (D.S.C. Oct. 28, 2020) (citing United States v. Wilson, 503 U.S. 329, 335 (1992)). "The computation of a federal sentence is governed by 18 U.S.C. § 3585 and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence. 18 U.S.C. § 3585." Id.

"A federal sentence does not commence until the Attorney General receives the defendant into her 'custody' for service of that sentence." United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998); 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody. . . ."); see also United States v. Pungitore, 910 F.2d 1084, 1119 (3d Cir. 1990) ("a federal sentence does not begin to

7

run until the defendant is delivered to the place where the sentence is to be served").[2]

"Generally, the first arresting sovereign acquires primary jurisdiction 'for purposes of trial, sentencing, and incarceration.  However the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign.'" Osborne v. Warden, Civil Action No. 1:22-00428, 2024 WL 6048884, *5 (S.D.W. Va. Apr. 8, 2024) (quoting United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980)).

As for prior custody credit, it is governed by 18 U.S.C. § 3585(b).  That statute provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1)  as a result of the offense for which the sentence was imposed; or
>
> (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

---

[2] Any claim that Freeman is entitled to a nunc pro tunc designation because her federal sentence was imposed prior to her state sentence is without merit.  The record makes clear Freeman's federal sentence did not commence until April 22, 2022.  Any time spent in federal custody prior to that date was via a writ of habeas corpus ad prosequendum and was merely a "loan" of Freeman to federal authorities.  United States v. Poole, 531 F.3d 263, 271 (4th Cir. 2008).

8

that has not been credited against another sentence. Id. "Consequently, a prisoner cannot receive double credit, and prior custody credit will, therefore, not ordinarily be granted under § 3585, if the prisoner has already received prior custody credit toward another sentence." Roberts, 2020 WL 8839683, at *3. "[T]he Attorney General, through the BOP—not the sentencing court—is responsible for determining whether an inmate should receive credit for time served prior to commencing a federal term of imprisonment pursuant to § 3585(b)." Id. at 4. Therefore, "a district court's recommendation is not binding on the BOP." Id.

In this case, the BOP determined that Freeman's federal sentence commenced on April 22, 2022, when she was received into primary federal custody. Because Freeman had already received credit for time spent in custody against her state sentence, the BOP properly concluded that she was not entitled to credit against her federal sentence. As for the court's desire that Freeman receive credit, as the court itself acknowledged, such was merely a recommendation. See ECF No. 17-1 at 11.[3] The BOP

---

[3] In a Text Order entered on November 14, 2023, the court stated:

> Recognizing that the BOP is charged with computing the amount of service time credit a federal prisoner is to receive on a sentence, at the request of Freeman, the court included a recommendation to the BOP that the defendant receive credit for time served in custody for relevant conduct associated with the offense of

9

could not award the recommended credit because it would result in Freeman receiving double credit which is prohibited under 18 U.S.C. § 3585(b).

*Nunc pro tunc designation*

"While generally a federal sentence cannot commence prior to the date of its imposition and until the defendant is in federal custody, an inmate in non-federal custody may have his federal sentence commence the date it is imposed, if the BOP makes a nunc pro tunc designation under 18 U.S.C. § 3621(b)" Roberts, 2020 WL 8839683, at *5; see also Evans, 159 F.3d at 911-12 ("When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of

---

conviction beginning March 1, 2018.  (ECF No. 140).  At the sentencing hearing it was made clear on the record that while the court could make a recommendation, the determination of credit for time served would be calculated by the BOP.  The Defendant indicated that she understood and agreed.  No objection was made to the court's determination regarding this matter.

Chapter 18 of the United States Code Section 3585 governs the calculation of a term of imprisonment for federal criminal defendants.  18 U.S.C. § 3621(b) authorizes the BOP to award credit for time served in state prison in certain situations.  While a sentencing court may make recommendations regarding certain matters to the BOP, the calculation of credit under § 3585(b) rests with the Attorney General of the United States, acting through the BOP.

ECF No. 17-1 at 11.

Prisons agrees to designate the state facility for service of the federal sentence.").

In deciding whether to make a nunc pro tunc designation, the BOP is guided by 18 U.S.C. § 3621(b), which provides as follows:

> (b) Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
>> (1) the resources of the facility contemplated;
>>
>> (2) the nature and circumstances of the offense;
>>
>> (3) the history and characteristics of the prisoner;
>>
>> (4) any statement by the court that imposed the sentence-
>>
>>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>>
>>> (B) recommending a type of penal or correctional facility as appropriate; and
>
>> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); Trowell v. Beeler, 135 F. App'x 590, 594 (4th Cir. 2005).  As our appeals court has noted, "Section 3621(b) grants BOP wide latitude in selecting the place of a

11

federal prisoner's confinement. . . ." Id. at 593; Mangum v Hallembaek, 910 F.3d 770, 779 (4th Cir. 2018) ("[T]he BOP typically enjoys broad discretion in analyzing nunc pro tunc requests in the first instance[.]").

Although the BOP must consider a prisoner's nunc pro tunc designation request, it is not obligated to grant such a request. See Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1991); see also Trowell, 135 F. App'x at 595 (holding that the BOP "must exercise its own independent judgment, taking into account all applicable factors in § 3621(b), including the views of the sentencing court"). The BOP's decision is reviewed for an abuse of discretion. See Trowell, 135 F. App'x at 593. Its decision in this regard is "entitled to a presumption of regularity and will not be disturbed in the absence of clear evidence to the contrary or abuse of discretion." Loveless v. Ziegler, Civil Action No. 5:11-cv-00991, 2012 WL 3614315, *7 (S.D.W. Va. Aug. 21, 2012); see also Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008) ("At its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance."); Newsome v. Williams, CIVIL ACTION NO., 2016 WL 4153615, at *5 (N.D.W. Va. Aug. 5, 2016) ("Although the analysis

12

contained in the BOP's worksheet is terse, and even though this Court might have analyzed and balanced some of the factors in a different manner, the worksheet's deficiencies do not indicate that the BOP abused its discretion.").

As Magistrate Judge Aboulhosn noted, the BOP properly considered Freeman's request for nunc pro tunc designation. Given the wide discretion accorded to the BOP in making such determinations, see McCarthy v. Warden, 544 F. App'x 52, 54 (3d Cir. 2013), Freeman is not entitled to habeas relief. The record reflects that the BOP reviewed Freeman's request under the five factors stated in § 3621(b), and denied it based upon the nature and characteristics of the offense of conviction, the history and characteristics of the prisoner, and the response of the sentencing court regarding how the sentence should be served.

Any argument that the BOP should have honored the wishes of the state sentencing court is without merit, as "neither the federal courts nor the [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently."  Barden, 921 F.2d at 478 n.4 (citing U.S. Const. art. VI, cl. 2); see also Mangum v Hallembaek, 910 F.3d 770, 778 (4th Cir. 2018) ("[T]he BOP is not bound by the state court's sentencing preference in the nunc pro tunc analysis."); Alls v. Stansberry, No. 1:09cv506 (LMB/TRJ), 2010 WL 723034, at *3 (E.D.

13

Va. Mar. 1, 2020) (holding that BOP did not abuse its discretion in denying petitioner's request for concurrent designation even though state court had ordered state sentence to run concurrent to federal sentence).[4]

The decisions in Mangum v. Hallembaek, 824 F.3d 98, 100-01 (4th Cir. 2016) ("Mangum I"), and Mangum v. Hallembaek, 910 F.3d 770 (4th Cir. 2018) ("Mangum II") do not compel a different result.  In Mangum I, the BOP rejected an inmate's request for a nunc pro tunc designation where the federal judgment was silent on whether a federal sentence should run consecutively or concurrently to an anticipated state sentence.  See Mangum I at 99-100.  The later-imposed state sentence did order the sentence to run concurrent to the federal sentence.  See id. at 100.  Mangum sought habeas relief pursuant to 28 U.S.C. § 2241.  See id. at 101.  In finding that the BOP abused its discretion in

---

[4] When Freeman was sentence by the State of North Carolina on August 23, 2019, she was still in the primary custody of North Carolina and, therefore, she had not yet started serving her federal sentence.  Therefore, there was no other sentence that Freeman was "currently serving."  As the PF&R noted, the state of North Carolina could have relinquished its primary jurisdiction over Freeman which would have delivered her into federal custody to begin serving her federal sentence.  Trowell, 135 F. App'x at 594 (had the state "wished to give effect to its court's concurrency order, the state could have . . . attempted to relinquish or waive primary jurisdiction after [the defendant] was sentenced in state court" or "[i]n other words," the state "could have sought to deliver him into federal custody for the purpose of beginning his federal sentence").

14

denying Mangum's nunc pro tunc request, the Mangum I court stated:

> At the time Mangum was sentenced in the North Carolina federal court in May 2007, a federal district judge in this circuit was powerless to impose a federal sentence to be served consecutively to a state sentence that had not yet been imposed. . . .  To be sure, Setser[5] later resolved a circuit split in holding that, under § 3584(a), a district court has authority to order that the federal sentence be consecutive to an anticipated state sentence that has not yet been imposed[.] . . .  In this case, one might reasonably expect the BOP to exercise its discretion to weigh heavily what the state judge did say rather than which the federal judge did not and could not say.

Id. at 102-03.  The appeals court remanded the case to the district court with instructions to return the matter to the BOP to "fully evaluate all relevant factors under 18 U.S.C. § 3621(b) in a fashion consistent with the views expressed in this opinion."  Id. at 103.

After the BOP once again denied his request for a nunc pro tunc designation, Mangum sought relief in the district court. Mangum II, 910 F.3d at 774-75.  On appeal, the Fourth Circuit held that the BOP failed to "evaluate the relevant factors under 18 U.S.C. § 3261(b) in a manner consistent with our mandate." Id. at 776.

Mangum II recognizes that its mandate is limited to cases in which defendants, like Mangum, were sentenced before the

---

[5] Setser v. United States, 566 U.S. 231 (2012).

15

Supreme Court decided Setser v. United States, 566 U.S. 231 (2012). See Mangum II at 778 n.6 ("We recognize, as noted above, that our precedent subsequently was abrogated by Setser v. United States, 566 U.S. 231 . . . (2012), which makes a federal court's views on this matter highly relevant. . . . Our mandate in Mangum, which we enforce today, was limited to the law as it stood at the time of Mangum's sentencing."). Other courts have distinguished the Mangum decisions where, like here, a defendant was sentenced in federal court post-Setser.

> Contrary to petitioner's arguments, this action is distinguishable from Mangum I and Mangum II because the federal court sentenced petitioner after the Supreme Court decided Setser. As explained in Mangum II, this timing is significant: Setser abrogated prior Fourth Circuit precedent and held that a federal district court has authority to run a federal sentence concurrently or consecutively to an anticipated state sentence. Id. at 778 n.6; see also Setser, 566 U.S. at 236, 244. Thus, unlike Mangum II, the federal sentencing court's views were "highly relevant" to the BOP's analysis of petitioner's request for nunc pro tunc designation."

Kirby v. Andrews, NO. 5:17-HC-2016-FL, 2020 WL 365561, at *4 (E.D.N.C. Jan. 22, 2020); see also Marchione v. Warden, FCI Edgefield, Case No. 6:24-cv-04649-JDA, 2025 WL 2611910, at *3 n.2 (D.S.C. Sept. 10, 2025) ("[The Mangum decisions] "are distinguishable because the sentence at issue in those decisions predated the Supreme Court's decision in Setser . . . .")

As to Freeman's objection that the BOP erred in concluding that the federal and North Carolina state charges were not

16

related, she admits that the presentence report did not find that they were related. See ECF No. 20 at 3 (referring to error in the presentence report). Nor did the district court treat the North Carolina charges as relevant conduct to the federal offense as it failed to apply U.S.S.G. § 5G1.3. Under these circumstances, the court cannot find that the BOP abused its discretion in finding the state and federal offense were unrelated. In any event, the BOP cited other factors in support of its decision and the court cannot conclude it abused its discretion.

    The district court had at least three opportunities to provide the relief Freeman seeks herein. First, at her original sentencing, the court could have ordered her 210-month federal sentence to run concurrent to the anticipated North Carolina sentence if in fact the North Carolina crimes were relevant conduct to the federal offense of conviction. See U.S.S.G. § 5G1.3(c). That section provides: "If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." Id. The judgment order and sentencing transcript are silent on whether

any state sentence would run concurrently or consecutively to the federal sentence. And the issue of prior custody credit was not part of the federal sentence.

Second, on remand for resentencing in 2023, the court could have adjusted the federal sentence of 110 months to reflect time spent in state custody pursuant to U.S.S.G. § 5G1.3(b).[6] The amended judgment order stated that "[i]t is the purpose and intent of this order that the defendant receive credit for time served in custody for relevant conduct associated with the offense of conviction beginning March 1, 2018." ECF No. 12-1 at 60. Contrary to petitioner's assertions herein, the judgment order does not make the finding that the North Carolina state charges are relevant conduct to the federal offense of conviction. And, like the original judgment order, the amended

---

[6] Pursuant to BOP policy, a post-remand sentence is treated as commencing on the same date as the original sentence. See PF&R at 17 n.6. However, if the sentencing judge believed it could not have utilized U.S.S.G. § 5G1.3(b) because the state sentence had expired in 2022, it could have instead departed downward pursuant to U.S.S.G. § 5K2.23 which states that "[a] downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense."

judgment order is silent as to whether the sentences should have run concurrently or consecutively.

Finally, the BOP reached out to the sentencing judge regarding his position on whether Freeman should receive a nunc pro tunc designation.  See ECF No. 17-1 at 7.  The letter to the district court from Kathy Williams of the BOP, dated May 8, 2024, is comprehensive in laying out to the court Freeman's procedural background and the impact of a retroactive designation.  The letter makes clear that the BOP would consider the sentencing court's preference as a substantial factor in whether Freeman's nunc pro tunc request would be approved.  As the PF&R explained, the sentencing court declined to make a recommendation for concurrent sentences.  Under these circumstances, the court cannot find that the BOP abused its discretion.

Accordingly, Freeman's objections are without merit and hereby **OVERRULED**.

The court has reviewed the PF&R in its totality and agrees with its analysis that petitioner's claims are without merit for the reasons explained therein.

The court adopts the Findings and Recommendation of Magistrate Judge Aboulhosn and **GRANTS** respondent's motion to dismiss or, in the alternative, motion for summary judgment.

19

The Clerk is directed to remove this case from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 30th day of September, 2025.

ENTER:

David A. Faber
Senior United States District Judge